ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeal of -- ) | |
| ) | |
| Kellogg Brown & Root Services, Inc. ) | ASBCA No. 58465 |
| ) | |
| Under Contract No. DAAA09-02-D-0007 ) | |

APPEARANCES FOR THE APPELLANT:    Thomas Barrett, Esq.
    Chief Senior Counsel
    David Newsome, Jr., Esq.
    Senior Legal Counsel

APPEARANCES FOR THE GOVERNMENT:    E. Michael Chiaparas, Esq.
    DCMA Chief Trial Attorney
    Douglas R. Jacobson, Esq.
    Trial Attorney
    Defense Contract Management Agency
    Bloomington, MN

## OPINION BY ADMINISTRATIVE JUDGE SHACKLEFORD
## ON APPELLANT'S MOTION FOR SUMMARY JUDGMENT

Kellogg Brown & Root Services, Inc. (KBR or appellant) moves for summary judgment, arguing that the Defense Contract Management Agency's (DCMA's or government's) claim for $2,285,026 based on alleged unallowable costs under Federal Acquisition Regulation (FAR) Part 31 is time-barred by the six-year statute of limitations set forth in the Contract Disputes Act (CDA), 41 U.S.C. §§ 7101-7109. The government opposes the motion. We deny the motion for the reasons set forth below.

## STATEMENT OF FACTS (SOF) FOR PURPOSES OF THE MOTION

1. On 14 December 2001, the Department of the Army awarded indefinite-delivery, indefinite-quantity Contract No. DAAA09-02-D-0007 (contract) to KBR.[1] The contract included a base period of one year and nine one-year option periods providing a broad range of services in support of various military operations for the Logistics Civil Augmentation Program (LOGCAP III). Specific work was issued via individual task orders on either a firm-fixed-priced or cost-reimbursable basis. (App. mot. ¶ 1; gov't opp'n at 2; R4, tab 2)

---

[1] The contract was originally awarded to Brown & Root Services (R4, tab 2). By novation on 1 August 2003, the contractor's name was changed to Kellogg Brown & Root Services, Inc. (app. mot. ¶ 1; gov't opp'n at 2).

2. The contract incorporated the following standard FAR and Defense FAR Supplement (DFARS) clauses: FAR 52.216-7, ALLOWABLE COST AND PAYMENT (MAR 2000); FAR 52.233-1, DISPUTES (DEC 1998) – ALTERNATE I (DEC 1991); FAR 52.216-18, ORDERING (OCT 1995); FAR 52.216-22, INDEFINITE QUANTITY (OCT 1995); FAR 52.217-8, OPTION TO EXTEND SERVICES (NOV 1999); FAR 52.217-9, OPTION TO EXTEND THE TERM OF THE CONTRACT (MAR 2000); DFARS 252.217-7027, CONTRACT DEFINITIZATION (OCT 1998) (R4, tab 2 at G-67, -69, -71-72, -75[2]). The contract also included a deviated version of FAR clause 52.245-5, GOVERNMENT PROPERTY (COST-REIMBURSEMENT, TIME-AND-MATERIAL, OR LABOR-HOUR CONTRACTS) (JAN 1986) (*id.* at G-77).

3. Under paragraph (a) of FAR 52.216-7, Allowable Cost and Payment clause, the government provides payments "in amounts determined to be allowable by the Contracting Officer in accordance with Subpart 31.2 of the [FAR] in effect on the date of this contract and the terms of this contract" (R4, tab 2 at G-67).

4. On 13 June 2003, the contracting officer (CO) issued undefinitized cost-plus-award-fee Task Order No. 0059 (TO 59) to KBR for logistic and life support services to the "V Corps and Coalition forces" in support of Operation Iraqi Freedom (app. mot. ¶¶ 3-5; gov't opp'n at 2; R4, tabs 3, 4 at G-89). The task order's Statement of Work (SOW) included, among other things, services for waste management and trash removal at eight sites within Iraq (R4, tab 4 at G-94, -97, -100, -103, -106, -109, -112, -117). Under paragraph 1.3 of the SOW, KBR was required to obtain approval from the CO for purchases of supplies and non-durable goods above the micro-purchase threshold of $2,500 on either a unit or cumulative cost basis, and for purchases of equipment and durable goods above a threshold of either a unit cost of $5,000 or a cumulative cost of $25,000 (R4, tab 4 at G-8).

5. Via execution of Modification No. 32 of TO 59 on 31 March 2005, the CO definitized the task order (R4, tab 16).[3]

6. Between March and July 2004, KBR obtained consent from the CO to purchase a total of 20 trash trucks to be used in performance of the waste management and trash removal requirements under TO 59 (app. mot. ¶ 8; gov't opp'n at 3; R4, tab 6 at G-122-23).

7. Between 26 April 2004 and 11 July 2004, KBR issued the following five purchase orders to Najd Company (Najd), a vendor located in Jordan: JP01021, JP01957, JP01136, JP01174, and JP01025 (app. mot. ¶¶ 6, 9; gov't opp'n at 2-3; R4, tab 6 at G-122-23).

---

[2] Citations to the Rule 4 file are to the consecutively-numbered pages unless otherwise indicated.

[3] The original record did not include a definitized version of TO 59. At the direction of the Board, the government supplemented the Rule 4 file with a copy (*see* Bd. corr., gov't ltr. dtd. 19 March 2015).

8. Between April 2004 and February 2005, KBR accepted delivery of 20 trash trucks by Najd in Jordan (R4, tab 6 at G-122). KBR accordingly paid Najd for deliveries under purchase orders JP01021, JP01957, JP01136, and JP01174, comprising 14 trash trucks (*id.* at G-123-24).

9. KBR submitted invoices to the government and received payment for the following purchase orders: JP01021 on 20 December 2004; JP01957 on 28 January 2005; and JP01136[4] and JP01174 on 17 March 2005 (app. mot. ¶ 10; gov't opp'n at 3).

10. In January 2005, KBR transported five trash trucks to Iraq and performed an inspection. In a 29 January 2005 memorandum, KBR's inspection unit recommended that the trucks be rejected because they did not meet certain quality, design, safety, and minimum industry standards and could not be operated for their specific purposes. (R4, tab 6 at G-124, -252-53) Subsequently, KBR cancelled plans to transport the remaining trucks in Jordan to Iraq and attempted to cancel all purchase orders in connection with the trucks (app. mot. ¶ 11; gov't opp'n at 3; R4, tab 6 at G-124).

11. KBR withheld the final payment due with respect to purchase order JP01025 in the amount of $861,300 for six trucks delivered (R4, tab 6 at G-124). On or about 12 February 2006, Najd sued KBR in Amman, Jordan, for the non-payment of invoices for those trucks (app. mot. ¶ 12; gov't opp'n at 3). On 15 June 2006, KBR initiated an arbitration proceeding against Najd seeking recovery of the payments made to Najd under four of the five purchase orders in the amount of $2,064,950, and a determination that KBR did not owe Najd any money for the allegedly defective trucks (app. mot. ¶ 13; gov't opp'n at 3; R4, tab 6 at G-124).

12. While the litigation proceedings between KBR and Najd were pending, Mr. Ron Allen, an attorney for KBR, emailed a government official, Mr. Robert Tucker,[5] leading to the following email exchange, in pertinent part, between the two on 15 June 2006:

> It appears we have litigation in progress in Jordan and potential arbitration of our dispute in the US concerning these [trash] trucks. I will keep you advised.

Mr. Tucker responded:

> Any idea on when a decision may be made?

---

[4] It appears that there was a typographical error with respect to the invoice number in this proposed undisputed fact in KBR's motion that is corrected.

[5] Mr. Tucker's position is not revealed in the record.

3

> Will there be a negative impact on the Government/KBR's case if the trucks are run periodically to lubricate the engine, transmission and seals?

Mr. Allen responded:

> No sir. Our litigators have to get the Jordan lawsuit dismissed so they can proceed with the arbitration. I would hope within our lifetime.
> As to the maintenance, I would say we have a duty to mitigate the overall damages which would necessitate maintenance no matter who eventually ends up with the trash, excuse me trash trucks. Of course, we would have to track our costs to present to the arbitrator.

Mr. Tucker responded:

> Would you please pass your thoughts regarding maintenance to the appropriate KBR personnel so that maintenance will be accomplished?

(App. mot., attach. A)

13. In a 30 July 2006[6] email, KBR stated to Najd that it sought reimbursement of the payments made to Najd for the alleged unacceptable technical design of the 20 delivered trucks (R4, tab 6 at G-254).

14. On 31 December 2006, KBR and Najd settled their dispute. The settlement resulted in KBR accepting all delivered trucks and Najd receiving the remaining $861,300 that was withheld by KBR. (App. mot. ¶ 15; gov't opp'n at 3; R4, tab 6 at G-257-59)

15. Subsequent to the settlement between KBR and Najd, KBR distributed the remaining trucks located in Jordan during the litigation proceedings to various sites in Iraq where the trucks were used for trash removal services (app. mot. ¶ 16; gov't opp'n at 3).

16. A memorandum, dated 2 March 2010, from the Department of Defense Inspector General (DoD-IG) to the Director of the DCMA – Iraq, requested DCMA to provide a "sufficiently supported account of all management decisions and actions taken concerning the acceptance, use, and disposition of the five trash trucks" located at an Iraqi site the DoD-IG encountered during its audit (R4, tab 6 at G-126).

---

[6] The date on this email has "2005" which appears to be an error.

17. On 9 April 2010, KBR submitted a report to the DCMA administrative CO (ACO) providing its account concerning the acquisition of the 20 trash trucks for performing the waste management and trash removal services under TO 59 pursuant to the DoD-IG 2 March 2010 memorandum (R4, tab 6 at G-122-25). The report maintained that the five trash trucks identified in the memorandum were used on the trash mission, with three of the five trucks rated as operational (*id.* at G-125).

18. In an audit report dated 24 May 2011 (No. 2131-2011F17900001), the Defense Contract Audit Agency (DCAA) questioned the total cost of $2,926,250 under FAR 31.201-3, Determining reasonableness, with respect to the 20 trash trucks purchased by KBR in support of TO 59. Among other things, DCAA found that KBR's incurred costs were unreasonable because KBR did not "exercise sound business judgment in providing the best value product to meet the customer's needs. In addition, it failed to follow its established practices to perform an adequate technical evaluation to assure the design of the product it was procuring would meet the customer's needs before subcontract award and after." (R4, tab 8 at G-312) DCAA found that the failure to use sound business judgment resulted in KBR being unable to self-perform the trash removal services and outsourcing the efforts (*id.* at G-314). DCAA also determined that KBR failed to take adequate action to maintain the delivered vehicles potentially resulting in long term damage to the vehicles (R4, tab 8 at G-312).

19. On 4 October 2012, the ACO issued a final decision asserting a monetary claim against KBR for $2,285,026, the total burdened amount for overpayments corresponding to 15 trash trucks the government deemed unallowable based on DCAA's 24 May 2011 audit report. The ACO determined that KBR's incurred costs were not reasonable under FAR 31.201-3, Determining reasonableness, alleging that KBR failed to use prudent business judgment because:

> There were many failures throughout this procurement action contrary to KBR's Procurement Procedure Guidelines; e.g. inadequate technical evaluation at pre-award; lack of quality inspections at delivery; and failure to aggressively act on the documentation contained in procurement file which noted severe flaws with the equipment, were all missed opportunities for KBR to subjugate this acquisition.

(R4, tab 15)

20. On 21 December 2012, KBR timely filed its notice of appeal to the Board appealing the 4 October 2012 final decision.

5

## DECISION

Prior to the U.S. Court of Appeals for the Federal Circuit's (CAFC's) decision in *Sikorsky Aircraft Corp. v. United States*, 773 F.3d 1315 (Fed. Cir. 2014), KBR had filed a motion to dismiss this appeal for lack of jurisdiction, asserting that the government's monetary claim was time-barred under the CDA's statute of limitations. The CAFC held in *Sikorsky* that the statute of limitations is no longer jurisdictional. *Id.* at 1322. We subsequently directed the parties to submit supplemental briefing on their views on the effect of the CAFC's decision in light of the pending motion to dismiss (*see* Bd. corr. dtd. 11 December 2014). We granted KBR's request that the Board convert its pending motion to dismiss to one for summary judgment, and directed the parties to submit additional briefing (*see* Bd. corr. dtd. 19 February 2015). In response to our order, KBR submitted a motion for summary judgment on 10 March 2015 and the government filed its opposition on 10 April 2015.

In moving for summary judgment, KBR re-asserts its contention that the government's claim is time-barred under the CDA's statute of limitations. Since a disposition that the government's claim is untimely would bar the government's recovery in this appeal, KBR's contention is treated as an affirmative defense. *Kellogg Brown & Root Services, Inc.*, ASBCA No. 58175, 15-1 BCA ¶ 35,988 at 175,825. KBR, as the party asserting the defense, bears the burden of proof. *Id.*

The guidelines for summary judgment are well established; the granting of summary judgment is appropriate where there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *DIRECTV Group, Inc. v. United States*, 670 F.3d 1370, 1374 (Fed. Cir. 2012). The movant has the burden to establish that there are no material facts in dispute. A material fact is one which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable inferences are drawn in favor of the non-movant. *Id.* at 255. At the summary judgment stage, we do not resolve controversies, weigh evidence, or make determinations of credibility. *Id.*

The issue before the Board is the date the government's claim accrued. The CDA requires a claim by the government against a contractor to be "submitted within 6 years after the accrual of the claim." 41 U.S.C. § 7103(a)(4)(A). It is undisputed that the government's claim was asserted in the 4 October 2012 final decision, and thus, to be timely under the CDA the claim could not have accrued prior to 4 October 2006. While the CDA does not define "accrual of the claim," FAR 33.201 defines that term, effective on the date of the contract award, as follows:

> *Accrual of a claim* means the date when all events, that fix the alleged liability of either the Government or the contractor and permit assertion of the claim, were known or should have been known. For liability to be fixed, some

6

injury must have occurred. However, monetary damages need not have been incurred.

"The events fixing liability should have been known when they occurred unless they can be reasonably found to have been either concealed or 'inherently unknowable' at that time." *Raytheon Missile Systems*, ASBCA No. 58011, 13 BCA ¶ 35,241 at 173,017 (citing *Holmes v. United States*, 657 F.3d 1303, 1317-20 (Fed. Cir. 2011)). This "should have known" test includes a reasonableness component and turns on what facts are reasonably knowable. *Id.*

To determine the claim accrual date, we begin with examining the legal basis of the claim. *Gray Personnel, Inc.*, ASBCA No. 54652, 06-2 BCA ¶ 33,378 at 165,475. The contract included FAR clause 52.216-7, Allowable Cost and Payment, whereby the government would reimburse KBR for all allowable costs it incurred during contract performance, including payments to subcontractors. To determine what is allowable, the clause refers to FAR Part 31.2. In his final decision, the ACO asserted a monetary claim demanding the return of payments made in connection with 15 of the 20 trash trucks purchased by KBR that were deemed unallowable (SOF ¶ 19). The legal basis of the government's claim is FAR 31.201-3, Determining reasonableness, which provides, effective on the date of contract award, that:

> (a) A cost is reasonable if, in its nature and amount, it does not exceed that which would be incurred by a prudent person in the conduct of competitive business. Reasonableness of specific costs must be examined with particular care in connection with firms or their separate divisions that may not be subject to effective competitive restraints. No presumption of reasonableness shall be attached to the incurrence of costs by a contractor. If an initial review of the facts results in a challenge of a specific cost by the contracting officer or the contracting officer's representative, the burden of proof shall be upon the contractor to establish that such cost is reasonable.

> (b) What is reasonable depends upon a variety of considerations and circumstances, including—

> (1) Whether it is the type of cost generally recognized as ordinary and necessary for the conduct of the contractor's business or the contract performance;

> (2) Generally accepted sound business practices, arm's-length bargaining, and Federal and State laws and regulations;

(3) The contractor's responsibilities to the Government, other customers, the owners of the business, employees, and the public at large; and—

(4) Any significant deviations from the contractor's established practices.

Here, the ACO relied on subparagraphs (b)(3) and (4) of the provision, determining that KBR's reimbursed costs were not reasonable because it failed to take prudent business actions in procuring the trash trucks by not complying with its own procedural guidelines including "inadequate technical evaluation at pre-award; lack of quality inspections at delivery; and failure to aggressively act on the documentation contained in procurement file which noted severe flaws with the equipment" (SOF ¶ 19). For the purposes of claim accrual, we must determine the date upon which the government knew or reasonably should have known that it possessed a claim against KBR.

KBR contends that there are no material facts in dispute and it is entitled to a finding that the government's claim is time-barred under the CDA's statute of limitations as a matter of law. KBR advances two alternative claim accrual dates that independently bar the government's recovery, both more than six years before the date of the 4 October 2012 final decision. KBR's initial argument is that the government's claim accrued no later than 17 March 2005, the date upon which the government paid or had paid KBR's invoices with respect to purchase orders JP01021, JP01957, JP01136 and JP01174 for a sum total of 14 delivered trucks. At that point, KBR alleges that the facts demonstrate that all events fixing its potential liability were known or should have been known because the government knew that the trucks were purchased between April and July 2004, provided consent to KBR to purchase the trucks, knew the trucks were delivered and found unsatisfactory, paid KBR's invoices with respect to four of the five purchase orders, and knew KBR attempted to recover its payments from Najd for the unsatisfactory condition of the delivered trucks. (App. mot. at 8) The government counters that its personnel did not review the specifications or the proposal that led to the award of the purchase orders, did not know about KBR's 29 January 2005 memorandum that identified problems associated with the trucks, and were unaware of the litigation between KBR and Najd (gov't opp'n at 13-14). KBR's alternative argument is that claim accrual occurred no later than 15 June 2006[7], the date upon which it alleges a government official, Mr. Tucker, became aware of litigation between KBR and Najd concerning the purchased trucks by email from KBR's attorney, Mr. Allen (app. mot. at 8). The government counters that the 15 June 2006 emails were devoid of any substantive details and only provided notice of the possible existence of litigation between KBR and Najd,

---

[7] We conclude that KBR meant to argue this date as the accrual date rather than 15 July 2006 in its motion. It appears that this was a typographical error. (*See* SOF ¶ 12)

8

and that its claim could not accrue until the outcome of the litigation between KBR and Najd was known (gov't opp'n at 18-20). The government maintains that its claim is timely, accruing no earlier than 9 April 2010, the date upon which the ACO first learned of the underlying issues with respect to KBR's procurement of the trash trucks through documents submitted by KBR (*id.* at 15).

We conclude that KBR has failed to carry its burden of proving that the government knew or should have known its potential claim accrued on either date advanced by KBR. Contrary to KBR's assertions, the government's consent provided to KBR prior to the issuance of the purchase orders to Najd and its subsequent payment of KBR's invoices for 14 trucks by 17 March 2005 in and of themselves do not demonstrate that the government actually knew or was even aware that the trucks were faulty and non-functional upon payment. Nor do the 15 June 2006 emails, on their face, show that the government knew that the underlying dispute between KBR and Najd involved KBR's attempt to recover its payments made to Najd due to the unsatisfactory condition of the trucks. The "should have known" test for claim accrual involves a reasonableness component, determining whether the events fixing liability were reasonably knowable to the claimant. The government asserts that it was not aware of the 29 January 2005 memorandum in which KBR inspected and first learned of the trucks' deficiencies when it paid KBR's invoices. The government also asserts that it was unaware of the condition of the trucks until 9 April 2010 when the ACO received documents that revealed the issues surrounding KBR's procurement of the trucks. Drawing all reasonable inferences and viewing the evidentiary record in a light favorable to the non-movant, here the government, it is simply not clear when the government should have known of the claim. Triable issues exist as to when the statute of limitations began to run and further development of the record is necessary. *See Raytheon Co.*, ASBCA No. 58849, 15-1 BCA ¶ 36,000 at 175,868 ("Summary judgment is not normally appropriate where reasonableness and subjective knowledge are facts at issue."). Therefore, summary judgment is not appropriate.

## CONCLUSION

Appellant's motion for summary judgment is denied.

Dated: 3 February 2016

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

(Signatures continued)

9

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

MARK A. MELNICK
Administrative Judge
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA No. 58465, Appeal of Kellogg Brown & Root Services, Inc., rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

10